UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONALD B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01572-TAB-RLY |
| | ) |
| LELAND C. DUDEK[1], Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

Plaintiff Donald B. appeals the Social Security Administration's denial of his application for disability insurance benefits.  Plaintiff argues that (1) the Administrative Law Judge relied on stale opinions of agency-contracted reviewing physicians with no knowledge of Plaintiff's most recent medical imaging of Plaintiff's right shoulder, and (2) the ALJ's subjective symptom evaluation improperly disregarded Plaintiff's credibility relating to the severity and limiting effects of his alleged impairments.  The Commissioner contends that Plaintiff's challenges ultimately amount to an improper request that this Court reweigh evidence.  However, the Court agrees that the ALJ did not properly submit the recent MRI of Plaintiff's shoulder for medical review and analysis.  Accordingly, Plaintiff's request for remand [Filing No. 17] is granted.

---

[1] Leland C. Dudek became the Acting Commissioner of Social Security in February 2025. Thus, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland C. Dudek should be substituted for Martin O'Malley as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**II.    Background**

Plaintiff alleges he has been disabled since August 1, 2020.  The ALJ received this case on remand from the Appeals Council pursuant to a remand from this Court.  The Court and the Appeals Council directed the ALJ to adequately evaluate Plaintiff's right shoulder impairment.  The ALJ held a hearing on March 28, 2024.  Following that hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2020, the alleged onset date.  At step two, the ALJ determined that Plaintiff had the following severe impairments: coronary artery disease, degenerative joint disease (right shoulder with status-post surgical repair), type II diabetes mellitus with peripheral neuropathy, chronic obstructive pulmonary disease, morbid obesity with status-post bariatric surgery, obstructive sleep apnea, and hypertension.  [Filing No. 15-10, at ECF p. 7.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work despite his limitations.  The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] can do occasional balancing, stooping, kneeling, crouching, crawling and climbing of ramps and stairs, but cannot climb ladders, ropes, or scaffolds. [Plaintiff's] work cannot require more than frequent concentrated exposure to pulmonary irritants such as dust, odors and fumes, and no more than occasional reaching overhead with the right upper extremity.

[Filing No. 15-10, at ECF p. 10 (removed typo from original).]

The ALJ summarized earlier medical evidence from the first hearing and then discussed new evidence, including an MRI of Plaintiff's right shoulder from December 14, 2021. [Filing No. 15-10, at ECF p. 13.] At step four, the ALJ concluded that Plaintiff could perform past relevant work as a cashier, as generally performed, and as an outside deliverer as actually and generally performed. Accordingly, the ALJ concluded that Plaintiff was not disabled from August 1, 2020, through May 22, 2024, the date of the ALJ's decision.

### III.  Discussion

Plaintiff argues that the ALJ erroneously relied on opinions from state agency reviewing physicians who had not observed Plaintiff's most recent medical imaging, as well as the ALJ's own unilateral medical judgments, which resulted in an unsupported RFC. Plaintiff further argues that the ALJ did not properly evaluate Plaintiff's subjective allegations. The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, 587 U.S. 97, 99, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

3

      A.      **Review of December 2021 MRI of Plaintiff's Right Shoulder**

The ALJ found Plaintiff could perform light work, but no more than occasional reaching overhead with the right upper extremity. [Filing No. 15-10, at ECF p. 10.] However, the ALJ did not include any further reaching or lifting restrictions. In doing so, Plaintiff claims the ALJ relied on stale opinions from state agency reviewing physicians that did not have knowledge of Plaintiff's right shoulder injury or the ability to observe Plaintiff's more recent medical imaging from December 2021. Plaintiff further argues the ALJ improperly relied on her own unilateral medical judgments in interpreting this more recent evidence and concluding that Plaintiff had no limitation in his ability to reach in directions other than overhead. [Filing No. 17, at ECF p. 9.]

Plaintiff underwent an MRI of his right shoulder in December 2021. [Filing No. 15-9, at ECF p. 62.] The ALJ noted in her decision that the December 2021 MRI documented:

> 1. Full-thickness, full[-]width tear of the distal supraspinatus tendon insertion with 3.2 cm retraction and mild to moderate associated muscle atrophy.
>
> 2. Moderate infraspinatus tendinopathy with partial-thickness articular surface tearing of the far anterior insertion and 7 insertional cyst formation.
>
> 3. Moderate glenohumeral and moderate to severe acromioclavicular degenerative joint disease, including a prominent undersurface spur of the distal clavicle that indents the supraspinatus myotendinous junction.
>
> 4. Thickening of the inferior glenohumeral ligament, which can be seek with adhesive capsulitis if appropriate clinical symptoms.

[Filing No. 15-10, at ECF p. 13.] The ALJ later acknowledged that "[c]learly, a fully torn rotator cuff documented on December 14, 2021, in objective findings is supportive of functional limitations due to pain, reduced strength, reduced range of motion, or a combination of all three (3)." [Filing No. 15-10, at ECF p. 15.] The ALJ cited no medical source opinion interpreting this MRI report directly, but the ALJ did acknowledge that after the MRI, Plaintiff underwent a

surgical procedure on his right shoulder with orthopedic specialist Dr. Mark Thomas Dillon in early 2022. [Filing No. 15-15, at ECF p. 425.]

The Commissioner claims the ALJ cited ample evidence Plaintiff could perform a reduced range of light work with occasional, right-hand reaching. Earlier in the ALJ's decision, the ALJ summarized clinical findings and medical evidence, including evidence documenting a July 2021 doctor visit and an October 2021 emergency room encounter. In the remainder of the ALJ's decision, the ALJ briefly summarized the opinion evidence. The ALJ noted that the state agency reviewing physicians assessed Plaintiff with a range of light exertional work and concluded he could perform past relevant work. The ALJ found these opinions persuasive because they were "supported by the evidence discussed above" and "consistent over all of their evaluations." [Filing No. 15-10, at ECF p. 15.] The ALJ found the evaluation of consultative examiner nurse practitioner Rachelle Goddard to be partially persuasive and helpful in crafting the RFC but noted her medical source statement was incomplete and inconsistent with her own clinical findings. [Filing No. 15-10, at ECF p. 15.] Finally, the ALJ stated generally that the "recommendations" of Dr. Dillon, the orthopedic specialist who performed Plaintiff's right shoulder surgery, were mostly persuasive, because "his estimated limits [were] generally consistent with a range of light exertional criteria." [Filing No. 15-10, at ECF p. 16.]

The Commissioner notes that Plaintiff: exhibited full motor strength, full grip strength and fine fingering, and full range of motion in all limbs at his January 2021 consultative examination; denied shoulder pain and once again exhibited full grip strength, motor strength, and range of motion in elbows and shoulder at the July 2021 examination; and had a normal examination in October 2021. However, these records and related opinions pre-date the December 2021 shoulder MRI and Plaintiff's subsequent surgery in 2022. Thus, the ALJ relied,

uncritically, on the opinions of reviewing physicians with no knowledge of the fact Plaintiff had a new full thickness tear and muscle atrophy secondary to degeneration within the right shoulder. There is no logical bridge between this evidence and the ALJ's conclusion that Plaintiff needed no additional shoulder-related limitations beyond occasional reaching overhead.

The record does contain some consultative examinations that occurred after the MRI and surgery. In September 2023, consultative examiner Dr. Shayne Small concluded—19 months after Plaintiff's right shoulder surgery—that Plaintiff could perform the lifting, pushing, pulling, and manipulation required for light work. [Filing No. 15-11, at ECF p 37-38.] However, there is no indication that Dr. Small had any knowledge of Plaintiff's shoulder MRI or surgery. Dr. Small considered an application filed in January 2023 that alleged disability beginning in May 2022 (after the shoulder surgery). [Filing No. 15-11, at ECF p. 34.] Dr. Small's focus would have been on medical records from the relevant time period after the alleged disability onset date of May 20, 2022. There is no indication that Dr. Small was aware of Plaintiff's December 2021 shoulder MRI or his shoulder surgery in early 2022. It is not clear that Dr. Small even had records from the treatment of Plaintiff's shoulder.

The ALJ also addressed Plaintiff's June 30, 2023, consultative examination with nurse practitioner Goddard. The ALJ observed that aside from "slight (but widespread) reduced range of motion and a positive straight leg raising test," Plaintiff's results were normal. [Filing No. 15-10, at ECF p. 15.] As noted above, the ALJ found Goddard's evaluation partially persuasive, but noted her medical source statement was incomplete and not consistent with her own clinical findings. Plaintiff expands upon the ALJ's observation and notes that Goddard's examination indicated range of motion limitations that are specific to an individual's ability to reach and corroborate Plaintiff's allegations of difficulty reaching in all directions in the form of reduced

6

shoulder abduction, adduction, flexion, external rotation, and internal rotation. [Filing No. 15-15, at ECF p. 494-496.]

The Commissioner contends the ALJ observed that Plaintiff exhibited slightly reduced range of motion in a variety of joints, but "he was not especially limited in his shoulders." [Filing No. 19, at ECF p. 6 (citing Filing No. 15-10, at ECF p. 15).] However, neither Goddard nor the ALJ's recitation of Goddard's examination directly opined or reached a definitive conclusion on Plaintiff's shoulder limitations. Goddard noted that her examination of Plaintiff's shoulders revealed no crepitus, tenderness, erythema, warmth, swelling, or nodules. However, Goddard did recite reduced range of motion. The ALJ summarized that portion of Goddard's evaluation by stating that "[a]side from slight (but widespread) reduced range of motion and a positive straight leg test, [Plaintiff's] physical examination was not preclusive of working with the limitations I have determined." [Filing No. 15-10, at ECF p. 15.] A finding of slight, but widespread reduced range of motion is not necessarily equivalent to concluding someone is "not especially limited in his shoulders." The Commissioner infers, without medical or opinion evidence directly stating as much, that Goddard's evaluation of Plaintiff supported the conclusion that Plaintiff did not have any additional shoulder limitations.

As for the December 2021 MRI itself, the ALJ quoted the findings from the MRI, as described above, and acknowledged that Dr. Dillon performed surgery to repair Plaintiff's right shoulder injury in February 2022. [Filing No. 15-10, at ECF p. 15.] However, the ALJ could not locate a surgical pathology report within the medical evidence. [Filing No. 15-10, at ECF p. 15.] Thus, the ALJ merely inferred based on later records that the surgery must have in fact occurred in February 2022 since Plaintiff was observed with a splint on her right arm on March 14, 2022.

The ALJ also concluded that "[t]he recommendations of orthopedic specialist, Dr. Dillon, M.D. [were] mostly persuasive, as his estimated limits [were] generally consistent with a range of light exertional criteria." [Filing No. 15-10, at ECF p. 16.] The Commissioner argues that this is not a case where the ALJ interpreted a raw MRI. Instead, the Commissioner argues that *Dr. Dillon* interpreted the MRI and performed successful surgery, and that the evidence shows that procedure returned Plaintiff's shoulder to functionality. However, Dr. Dillon's interpretation of the MRI is not set forth in the ALJ's decision. The ALJ did not elaborate on the "recommendations" of Dr. Dillon. The Commissioner relies on the fact that Plaintiff ultimately had surgery on the shoulder, and claims Dr. Dillon "predicted" Plaintiff would be able to lift 20 pounds when he was six months out from surgery and could return to full activities 9-12 months after surgery, and that subsequent evidence validated his prediction. [Filing No. 19, at ECF p. 7.] The Commissioner further argues Dr. Dillon's projections were consistent with the ALJ's finding that Plaintiff could do light work within 12 months of his December 2021 shoulder injury. The Commissioner's characterization of Dr. Dillon's records lacks vital context. Dr. Dillon's "projections" occurred before Plaintiff ever underwent surgery and appear to be routine pre-surgery explanations to a patient of the risks and typical post-operative outlook from the procedure. At the time Dr. Dillon stated these projections, he also informed Plaintiff of the risks of the procedure and noted not all tears are able to be repaired. [Filing No. 15-9, at ECF p. 69.] This is not equivalent to a medical interpretation of the evidence.

Plaintiff persuasively argues that the ALJ relied upon the agency's reviewing physicians, who never examined Plaintiff or had any knowledge of his newly discovered right shoulder etiology, in assessing no forward or lateral reaching limitations with his right upper extremity. The ALJ should have obtained the post-operative records from Plaintiff's surgery and also should

8

have re-submitted Plaintiff's case to medical expert scrutiny, in light of potentially determinative, complex medical imagining and operative report which the agency's reviewing physicians never observed. Similarly, the Commissioner's reliance on Dr. Dillon's context-free projections—before Plaintiff ever underwent surgery—combined with the ALJ's own medical assessment of functional limitations attributable to the defects described in the MRI report, was improper. The ALJ acknowledged that a fully torn rotator cuff, documented on the December 2021 MRI, supported functional limitations due to pain, reduced strength, reduced range of motion, or a combination of all three. [Filing No. 15-10, at ECF p. 15.] Yet the ALJ relied on her own medical judgments, outdated consultative opinions, and Dr. Dillon's context-free projections to support her conclusion that Plaintiff only needed to limit overhead reaching. Remand is required for an expert to properly review Plaintiff's shoulder-related objective evidence, imaging, and surgical report, as well as possibly any post-operative records available, and offer a fully informed opinion as to the medical significance this evidence demonstrates.

   **B.**  **Evaluation of Plaintiff's Subjective Allegations**

Plaintiff also claims that the ALJ failed to properly address his subjective symptoms. [Filing No. 17, at ECF p. 16.] Specifically, Plaintiff takes issue with the ALJ's conclusion that Plaintiff's "testimony was at times quite inconsistent with medical evidence" and "while such inconsistencies do not always go directly to the heart of whether a claimant is disabled, or better stated functionally limited, in this case, those inconsistencies are quite relevant." [Filing No. 15-10, at ECF p. 14.] The ALJ concluded that Plaintiff's testimony regarding his motorcycle riding activities supported a reasonable inference that Plaintiff is not as limited as he alleged. [Filing No. 15-10, at ECF p. 14.]

Plaintiff claims the ALJ appears to have concluded that because Plaintiff could not definitively recall the exact timeline of multiple motorcycle accidents, he was dishonest about the severity of his limitations. Plaintiff further contends that the notion that he was not as limited as alleged—because he attempted to ride his motorcycle—lacks a logical connection and context. [Filing No. 17, at ECF p. 17.]

Plaintiff argues that the record demonstrates he should not have been on a motorcycle, and Plaintiff's rare attempts to use one during the relevant time period reflect that, rather than the notion that he was more physically capable than he let on. Plaintiff states:

> Put simply, that Plaintiff exercised poor judgment in getting on a motorcycle when he clearly was not capable of safely doing so due to his impairments is not a logical reason to conclude he was exaggerating the extent of his conditions. If anything, it is reason to believe he did not underestimate his capabilities, but rather overestimated them.

[Filing No. 17, at ECF p. 18.] Therefore, Plaintiff argues that the ALJ's discrediting of Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms due to his motorcycle activity amounts to illogical, patently wrong analysis that requires remand.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted). "[The Court] will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (internal citation and quotation marks omitted).

Since the Court has already determined remand is proper, it need not address this issue in greater detail. On remand, the ALJ will be able to evaluate all the evidence, including Plaintiff's

subjective statements, and then determine whether those allegations are consistent with the record evidence. In doing so, the ALJ may wish to consider whether Plaintiff's attempts at riding his motorcycle show he was not as limited as alleged, or if instead Plaintiff merely demonstrated poor judgment and an inability to recognize his own limitations when he tried, and often failed, to ride his motorcycle.[2]

### IV.  Conclusion

For these reasons, Plaintiff's request for remand is granted. [Filing No. 17.]

Date: 5/6/2025

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email

---

[2] Perhaps worth noting, though—if this was Plaintiff's only argument on appeal, he likely would not have succeeded in persuading the Court to grant his request for remand. Plaintiff's insistence that a different inference should be drawn from Plaintiff's motorcycle activity amounts to an improper demand that this Court reweigh evidence. While Plaintiff may disagree with the ALJ's interpretation of this evidence or wish the ALJ drew different conclusions, the Court cannot re-weigh the evidence and instead defers to the ALJ's conclusions. *See, e.g., Zoch v. Saul*, 981 F.3d 597, 901 (7th Cir. 2020) ("We do not decide questions of credibility, deferring instead to the ALJ's conclusions unless patently wrong." (Internal citation and quotation marks omitted)).